UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-322(DSD/JJK)

Mayo Clinic, Mayo Foundation
for Medical Education &
Research and Cerner
Corporation,

        Plaintiffs,

v.                                    **ORDER**

Peter L. Elkin, M.D.,

        Defendant.

John C. Adkisson, Esq., and Fish & Richardson P.C., 60 South Sixth Street, Suite 3200, Minneapolis, MN 55402; Thomas S. Fraser, Esq., Gregory E. Karpenko, Esq. and Fredrikson & Byron, 200 South Sixth Street, Minneapolis, MN 55402 and Megan J. Redmond, Esq., Beth Larigan, Esq., B. Trent Webb, Esq., Daniel Devers, Esq., and Shook, Hardy & Bacon, LLP, 2555 Grand Boulevard, Kansas City, MO 64108, counsel for plaintiffs.

W. Patrick Judge, Esq., Law Office of W. Patrick Judge, 1321 Pinehurst Avenue, St. Paul, MN 55116, counsel for defendant.

This matter is before the court upon the motions to dismiss, to exclude expert opinions and for partial summary judgment by plaintiff Cerner Corporation (Cerner). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants in part the motion to dismiss and grants the motions to exclude expert opinions and for partial summary judgment.

## BACKGROUND

This intellectual property dispute arises out of the employment of defendant Dr. Peter Elkin by plaintiff Mayo Clinic (Mayo). The background of this action is set out in prior orders, and the court recites only those facts necessary to the disposition of these motions. Mayo hired Elkin in 1996 as a full-time clinician and researcher. See Elkin Aff. ¶ 6. During his tenure at Mayo, Elkin and a team of researchers worked on natural language processing (NLP) software. NLP software is "a collection of programs [that] can be tailored to perform a wide variety of medical informatics functions." Argo Decl. ¶ 6, ECF No. 104. Like other computer software, the NLP software is "described by" its source code (NLP source code). Id. ¶ 8. "A computer program's 'source code' is the program as initially written in the programming language." Action Tapes, Inc. v. Mattson, 462 F.3d 1010, 1013 (8th Cir. 2006). Mayo claims that it owns the NLP software and source code. Elkin maintains that he owns the NLP software and source code.

Cerner and Mayo are parties to an exclusive license agreement governing the NLP software and source code (License Agreement). Cerner's commercial product, Discern nCode, uses NLP technology. See Answer Def.'s Countercl. ¶ 33, ECF No. 30. Elkin claims that

Discern nCode's source code is substantially the same as the NLP code that he created, tested and published in MUMPS programming language before he arrived at Mayo.

Mayo, Mayo Foundation, and Cerner (collectively, plaintiffs) sued Elkin in state court alleging breach of contract and related claims, and seeking a declaration regarding ownership and rights to the NLP software.[1] Elkin timely removed, and counterclaimed. Elkin seeks a declaration regarding the parties' rights to license, use, market and disclose the NLP software, and a declaration that "Cerner has no copyright in, and is not eligible to obtain a copyright for, its product Discern nCode," because it is derivative of the MUMPS code he developed prior to his employment at Mayo.[2] See Answer ¶ 79, ECF No. 21.

Cerner moves to dismiss counterclaims 79(a)-(e) for lack of standing and failure to state a claim pursuant to Federal Rules of

---

[1] Mayo Foundation is the only plaintiff named in the January 21, 2009, complaint. See ECF No. 1-1. On February 10, 2009, Elkin sued Mayo, Mayo Foundation, and Cerner in the United States District Court for the Southern District of New York. See ECF No. 12-5. On April 24, 2009, Mayo Foundation amended its complaint, adding Mayo and Cerner as plaintiffs. See ECF No. 12. On May 13, 2009, the action filed in the Southern District of New York was consolidated with the instant action. See ECF No. 29. Plaintiffs filed a second amended complaint on October 12, 2009. See ECF No. 75.

[2] The declaratory judgment claim, counterclaim 6, is pleaded in subparagraphs 79(a)-(e). The court refers to each counterclaim by subparagraph number.

Civil Procedure 12(b)(1) and 12(c).[3] Cerner also moves to exclude expert testimony and for summary judgment on counterclaim 79(d) based on failure to provide admissible expert testimony.

**DISCUSSION**

**I. Motion to Dismiss**

**A. Standing**

Article III of the United States Constitution limits the jurisdiction of federal courts to justiciable cases and controversies. U.S. Const. art. III, § 2; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559-60 (1992). Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III." Lujan, 504 U.S. at 560. To satisfy Article III standing requirements, a plaintiff must demonstrate:

> 1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual and imminent, not conjectural or hypothetical; 2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citation omitted). Whether a party

---

[3] Elkin's response brief and supporting affidavits were untimely filed on September 29, 2010. See ECF Nos. 222-25; D. Minn. L.R. 7.1(b)(2) (response brief due 21 days before October 1, 2010, motion hearing). Although the court disfavors untimely submissions, it considers Elkin's filings.

4

has established the three elements of standing is an "inescapable threshold question." Advantage Media, L.L.C. v. City of Eden Prairie, 456 F.3d 793, 799 (8th Cir. 2006).

If a plaintiff lacks standing, "the district court has no subject-matter jurisdiction." Faibisch v. Univ. of Minn., 304 F.3d 797, 801 (8th Cir. 2002). A court must dismiss an action over which it lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(h)(3). When necessary, the court may look to matters outside the pleadings to determine whether standing exists. See Osborn v. United States, 918 F.2d 724, 729 n.4 (8th Cir. 1990).

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy," the court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). To have standing to seek relief, there must be "a substantial controversy" between parties with "adverse legal interests." Marine Equip. Mgmt. Co. v. United States, 4 F.3d 643, 646 (8th Cir. 1993) (internal quotation marks omitted). Because this test "is imprecise, the decision of whether such controversy exists is made upon the facts on a case by case basis." Id. (citing Golden v. Zwickler, 394 U.S. 103, 108 (1969)).

### 1. Counterclaim 79(a)

Elkin first seeks a declaration that he "developed the natural language processor before he was employed by Mayo; that he disclosed the software as required by Mayo policy but did not

5

assign it to Mayo; and that the natural language processor and associated databases are therefore [his] exclusive property." Answer ¶ 79(a). Cerner argues that Elkin lacks standing because the claim relates to the License Agreement, and Elkin is neither a party to the agreement nor a third-party beneficiary. See, e.g., Allan Block Corp. v. Cnty. Materials Corp., 634 F. Supp. 2d 979, 1001 (D. Minn. 2008) (no standing to sue nonparty to contract for breach of implied covenant of good faith and fair dealing); Wurm v. John Deere Leasing Co., 405 N.W.2d 484, 486 (Minn. Ct. App. 1987) (third-party has no standing to recover under contract).

Elkin's claim does not seek to enforce the contract between Cerner and Mayo. Rather, Elkin seeks a declaration of his rights with respect to ownership of the NLP software based on his assertion that he developed and disclosed it before his tenure at Mayo. The fact that the NLP software is the subject of the License Agreement does not void Elkin's right to assert a legal, protectable interest in the software. Moreover, Cerner also seeks a declaratory judgment regarding the parties' respective rights to use and disclose the NLP software, and alleges that "an actual case or controversy exists between Mayo and Cerner on the one hand, and Dr. Elkin on the other." See Second Am. Compl. ¶ 93, ECF No. 75. Therefore, Elkin's position as a nonparty to the License Agreement has no bearing on his standing to assert counterclaim 79(a).

6

Cerner next argues that counterclaim 79(a) concerns the employment relationship between Mayo and Elkin, and, therefore, Elkin sued the wrong defendant. A plaintiff may only obtain recovery from "a person or entity whose actions may be causally linked to the alleged injury, and from whom relief or remedy is possible." See Toth v. United Auto. Aerospace & Agr. Implement Workers of Am., 743 F.2d 398, 404 (6th Cir. 1984). When Elkin developed the NLP and whether he properly disclosed it do not directly involve Cerner. However, these issues are central to resolving the legal question of who owns and has the right to use, sell or license the software. A declaration in favor of Elkin is adverse to Cerner's interests in the NLP. Moreover, by licensing the disputed software, Cerner's actions are causally linked to Elkin's alleged injury in fact. Therefore, Elkin has standing to assert the claim against Cerner, and the court denies the motion to dismiss counterclaim 79(a).[4]

### 2. Counterclaim 79(b)

Elkin next seeks a declaration that "Mayo had no right to license" the NLP to Cerner, and "Cerner has no right to use or disclose it pursuant to its License Agreement with Mayo." Answer ¶ 79(b). Cerner argues that because the claim refers to its rights "pursuant to" the License Agreement, Elkin "seeks a declaration of

---

[4] Unlike the notes at issue in Easter v. Am. W. Fin., 381 F.3d 948 (9th Cir. 2004), Cerner has and uses the disputed property from which Elkin's alleged injury arises. Id. at 961-62.

7

rights under the Mayo/Cerner agreement" and compels the court to interpret definitions, schedules, and other provisions of the License Agreement. Pl.'s Mem. Supp. 2, ECF No. 194.

Despite the reference to the License Agreement, the substance of this claim relies on the central question of ownership of the NLP. Elkin does not dispute that the License Agreement purports to give Cerner rights to the NLP. Rather, Elkin claims that Cerner has no rights to the software because he owns it. Elkin's claim, therefore, does not rely on the License Agreement, but rather on the disputed ownership of the NLP. Therefore, the court finds that Elkin has standing to raise this claim, and the motion to dismiss counterclaim 79(b) is denied.

### 3. Counterclaim 79(c)

Elkin next seeks a declaration that "Cerner's license is limited to the version of the software that existed in October 2004 and Cerner has no right to any modification of the source code or any new version of the software developed after October 2004." Answer ¶ 79(c). Here, Elkin is not asserting his own legal interest in the software, but rather seeks a declaration only as to the limits of Cerner's license and Cerner's right to modifications. The claim raises issues purely within the scope of the License Agreement. As a nonparty to the License Agreement, Elkin lacks standing to seek such a declaration. Therefore, the motion to dismiss counterclaim 79(c) is granted.

**B. Failure to State a Claim**

The court applies the same standard to motions under Federal Rules of Civil Procedure 12(c) and 12(b)(6). Ashley Cnty., Ark. v. Pfizer, Inc., 552 F.3d. 659, 665 (8th Cir. 2009) (citation omitted). Thus, to survive a motion for judgment on the pleadings, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (quoting Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). "A claim has facial plausibility when the plaintiff [has pleaded] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Although a complaint need not contain detailed factual allegations, it must raise a right to relief above the speculative level. See Twombly, 550 U.S. at 555. "[L]abels and conclusions" are not sufficient, and are not entitled to an assumption of truth. Iqbal, 129 S. Ct. at 1949.

In counterclaim 79(e), Elkin seeks a declaration that "Cerner and Mayo may not enjoin or interfere with (i) [his] use, development, and disclosure of the natural language processor ... and other software and associated databases, (ii) [his] research ... using such software and associated databases, or (iii) the publication and dissemination of the results ... of such research."

9

Answer ¶ 79(e). Cerner argues that this counterclaim is merely a prayer for relief and not a request that the court enter a declaration. A prayer for relief is "[a] request addressed to the court and appearing at the end of a pleading." Black's Law Dictionary 1213 (9th ed. 2009). The declaration sought in counterclaim 79(e) is part of the ultimate satisfaction requested of the court. As such, it is not a claim and therefore the motion to dismiss counterclaim 79(e) is granted.

## II. Summary Judgment

In counterclaim 79(d), Elkin seeks a declaration that "pursuant to 17 U.S.C. § 103, Cerner has no copyright in, and is not eligible to obtain a copyright for, its product Discern nCode" because it is "an entirely derivative work based on" Elkin's original software and "has been unlawfully licensed to Cerner by Mayo." Answer ¶ 79(d). Cerner moves to dismiss the claim for lack of standing and failure to state a claim. Alternatively, Cerner moves to exclude the expert testimony of Elkin and Dr. Tom Love, and, subsequently, for partial summary judgment. As a result, the court considers matters outside the pleadings and converts the motion to dismiss to a motion for summary judgment. See Fed. R. Civ. P. 12(d).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ.

10

P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). If a plaintiff cannot support each essential element of his claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial. See Celotex, 477 U.S. at 322-23.

### A. Standing

Cerner first argues that Elkin lacks standing to assert the copyright claim because it relates to the License Agreement. This claim, however, does not turn on the License Agreement, but rather on the assertion that Cerner's product is "entirely derivative" of the disputed software. Accordingly, Elkin has alleged an injury in fact: that Cerner's product is taken or developed from the disputed software. The injury is traceable to Cerner, and redressable by a declaration of the court. Therefore, Elkin has standing to bring this claim.

### B. Failure to State a Claim

Cerner next argues that Elkin fails to state a claim because he cannot satisfy the elements of copyright infringement. To establish copyright infringement, Elkin must show ownership of a valid copyright and that Cerner copied original elements of his work. See Mulcahy v. Cheetah Learning LLC, 386 F.3d 849, 852 (8th

11

Cir. 2004) (citing Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). Ordinarily, copyright holders must register their works before suing for copyright infringement. See 17 U.S.C. § 411(a); cf. Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1241 (2010) (failure to register copyright does not deprive federal court of subject-matter jurisdiction over infringement claims involving unregistered copyrights).

Elkin concedes that he has no registered copyright in the software and that without registration he cannot state a claim for infringement. Elkin contends, however, that he is not suing for copyright infringement, but rather for a declaration that Cerner has no right to copyright its product based on Elkin's ownership of the disputed software. See Def.'s Mot. Opp'n 10. This argument is not supported by Elkin's pleadings or memoranda, which plainly seek a declaration of rights under the Copyright Act, 17 U.S.C. § 103. Moreover, a declaration that Discern nCode is "entirely derivative" of Elkin's original software requires a determination that Cerner violated Elkin's exclusive right to prepare derivative works. See 17 U.S.C. § 106(2) (copyright owner has exclusive right to prepare derivative works based on copyrighted work). Anyone who violates that exclusive right is an infringer. See 17 U.S.C. § 501. Accordingly, Elkin's claim requires a determination of whether Cerner committed copyright infringement. This necessity is reinforced by Elkin's Daubert briefings, which analyze counterclaim

79(d) as a copyright infringement claim. See Def.'s Mem. Opp'n 7, ECF No. 246. Because he has no registered copyright, Elkin fails to support an essential element of his claim, and summary judgment is warranted.

**C. Expert Testimony**

Summary judgment is also warranted because Elkin failed to show copying, the second element of an infringement claim. See Mulcahy, 386 F.3d at 852. To show copying, Elkin can present direct evidence of copying or establish that (1) Cerner had access to the MUMPS code, and (2) Discern nCode is substantially similar to the MUMPS code. See Taylor Corp. v. Four Seasons Greetings, LLC, 403 F.3d 958, 964 (8th Cir. 2005). Because there is no direct evidence of copying, the parties limit their arguments to the second prong. The parties do not dispute that expert testimony is needed to show substantial similarity, and that without admissible expert testimony, summary judgment is warranted. See, e.g., R.C. Olmstead, Inc., v. CU Interface, LLC, 606 F.3d 262, 275 (6th Cir. 2010) (requiring expert testimony to show substantial similarity); Pepper v. Int'l Gaming Sys., LLC, 312 F. Supp. 2d 853, 859 (N.D. Miss. 2004) (summary judgment warranted without expert testimony); i-Systems, Inc. v. Softwares, Inc., No. 02-CV-1951, 2004 WL 742082, at *10 (D. Minn. Mar. 29, 2004) (experts needed due to "the complexity and evolving nature of computer technology"). Cerner argues that Elkin failed to provide admissible expert testimony.

13

The Federal Rules of Evidence permit expert testimony "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Further, the witness offering such testimony must be "qualified as an expert by knowledge, skill, experience, training, or education." Id. The district court has a "gatekeeping" obligation to ensure that all testimony admitted under Rule 702 is reliable. See Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993). To determine the admissibility of expert testimony, a court must consider, among other factors, whether the methodology is generally accepted within the scientific community. Id. at 593-94.

### 1. Elkin's Expert Opinion

Cerner argues that Elkin's expert opinions are inadmissible because Elkin testifies about the Discern nCode source code, which he has never seen. Elkin argues that he should be allowed to testify as an expert because he is among the world's top researchers in biomedical informatics. Expert testimony is not admissible if it is "speculative, unsupported by sufficient facts, or contrary to the facts of the case." Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 757 (8th Cir. 2006). Despite Elkin's credentials, he is not qualified to present expert opinion about the similarity between Discern nCode source code and MUMPS source code when he has never

14

seen the Discern nCode source code. Without reviewing the source code, Elkin has no factual basis for his opinion. The court therefore grants Cerner's motion to exclude Elkin's expert opinion.

### 2. **Love's Expert Opinion**

Cerner claims that Love failed to use proper methodology in formulating his expert opinions, and that the opinions are unsupported, unreliable and conclusory. Cerner argues that the proper methodology to determine substantial similarity is a three-step procedure, called Abstraction-Filtration-Comparison (AFC). Elkin admits that Love did not apply the AFC test but argues that the analysis is not required because it has not been adopted by the Eighth Circuit.

Under the AFC approach, the court "break[s] down the allegedly infringed program into its constituent structural parts"; filters out all non-protectable material; and then "compare[s] this material with the structure of an allegedly infringing program." Computer Assocs. Int'l, Inc. v. Altai, Inc., 982 F.2d 693, 706 (2nd Cir. 1992). Courts in the District of Minnesota have used the AFC test to determine whether nonliteral elements of two computer programs are substantially similar. See Control Data Sys., Inc. v. Infoware, Inc., 903 F. Supp. 1316, 1322 (D. Minn. 1995); i-Systems, Inc., No. 02-CV-1951, 2004 WL 742082, at *10. Moreover, every Circuit to consider the issue has adopted the AFC test. See, e.g., Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 142 (5th Cir. 2004);

Sturdza v. United Arab Emirates, 281 F.3d 1287, 1295 (D.C. Cir. 2002); Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc., 307 F.3d 197, 214-16 (3rd Cir. 2002); Mitel, Inc. v. Iqtel, Inc., 124 F.3d 1366, 1370-71 (10th Cir. 1997); Altera Corp. v. Clear Logic, Inc., 424 F.3d 1079, 1085 (9th Cir. 1996); MiTek Holdings, Inc. v. Arce Eng'g Co., Inc., 89 F.3d 1548, 1555 & n.16 (11th Cir. 1996). To support his argument that the AFC test need not apply, Elkin cites a case discussing the limitations of the AFC test in the context of literal copying. See Lotus Dev. Corp. v. Borland Int'l, Inc., 49 F.3d 807, 815 (1st Cir. 1995). However, literal copying is not at issue here. See Love Dep. 150-154 (no evidence Cerner had access to MUMPS code, therefore no evidence of literal copying).[5] Further, Elkin fails to show that the procedures used by Love are generally accepted in the scientific community. Therefore, Love's testimony is not based on reliable principles, and is inadmissible.[6]

---

[5] Love recanted his initial opinion that Discern nCode was developed with access to the MUMPS code, see Love Expert Report at 13, because the opinion was based on an erroneous comparison, see Love Dep. 151.

[6] Even if the court were to accept Love's methodology, the record shows that Love compared the wrong sets of source code in formulating his opinion. See Love Dep. 150-54. Love compared the MUMPS code and another source code, which he mistakenly believed to be Discern nCode. Id. In fact, Love made no direct comparison between the MUMPS code and Discern nCode. Id. at 155. Therefore, Love's expert testimony is also inadmissible because it is not based upon sufficient facts or data.

Without admissible expert testimony, Elkin fails to provide evidence that the Discern nCode source code is substantially similar to the MUMPS source code. Therefore, the motion for partial summary judgment on counterclaim 79(d) is granted.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1. Cerner's motion to dismiss [ECF No. 192] is granted as to counterclaims 79(c) and (e) and denied as to counterclaims 79(a) and (b);

2. Cerner's motion to exclude Dr. Elkin's expert opinions [ECF No. 236] is granted;

3. Cerner's motion to exclude Dr. Love's expert opinions [ECF No. 231] is granted; and

4. Cerner's motions to dismiss and for partial summary judgment on counterclaim 79(d) [ECF Nos. 192, 226] are granted.

Dated: December 27, 2010

                                           s/David S. Doty
                                           David S. Doty, Judge
                                           United States District Court