UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 09-322(DSD/JJK)

Mayo Clinic, Mayo Foundation
for Medical Education &
Research and Cerner
Corporation,

       Plaintiffs,

v.                                      **ORDER**

Peter L. Elkin, M.D.,

       Defendant.

      Jonathan E. Singer, Esq., Michael E. Florey, Esq., John C. Adkisson, Esq., and Fish & Richardson P.C., 60 South Sixth Street, Suite 3200, Minneapolis, MN 55402; Peter Galindez, Jr., Esq., Mayo Clinic Legal Department, 200 First Street SW, Rochester, MN 55905; Thomas S. Fraser, Esq., Gregory E. Karpenko, Esq. and Fredrikson & Byron, 200 South Sixth Street, Minneapolis, MN 55402 and Megan J. Redmond, Esq., Beth Larigan, Esq., B. Trent Webb, Esq., Daniel Devers, Esq., and Shook, Hardy & Bacon, LLP, 2555 Grand Boulevard, Kansas City, MO 64108, counsel for plaintiffs.

      W. Patrick Judge, Esq., Law Office of W. Patrick Judge, 1321 Pinehurst Avenue, St. Paul, MN 55116; David J. Massa, Esq., Kenneth Solomon, Esq., Ryan J. McCarty, Esq. and Gallop, Johnson & Neuman, 101 South Hanley Road, Suite 1700, St. Louis, MO 63105 and Matthew H. Morgan, Esq., Nichols Kaster, 80 South Eighth Street, Suite 4600, Minneapolis, MN 55402, counsel for defendant.

      This matter is before the court upon the request for attorneys' fees by plaintiffs Mayo Clinic and Mayo Foundation for Medical Education & Research (collectively, Mayo). Based on a

review of the file, record and proceedings herein, and for the following reasons, the court awards $1,900,139.30 in attorneys' fees to Mayo.

## BACKGROUND

On April 27, 2011, following a five-day jury trial, the jury rendered a special verdict and found that defendant Dr. Peter Elkin (1) breached his employment contract with Mayo; (2) intentionally interfered with an existing contractual relationship between Mayo and Cerner Corporation (Cerner); (3) intentionally interfered with a prospective contractual relationship between Mayo and Cerner; (4) willfully and maliciously misappropriated one or more trade secrets belonging to Mayo; (5) intentionally exercised control over the medical-informatics software or its source code contrary to Mayo's rights; and (6) breached a fiduciary duty he owed to Mayo. The jury also found that Mayo failed to pay Elkin certain royalties, and awarded him $143,222.20.

## DISCUSSION

### I. Attorneys' Fees

Under Minnesota statute, if "willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party." Minn. Stat. § 325C.04; see also Zawels v. Edutronics, Inc., 520 N.W.2d 520, 524 (Minn. Ct. App.

2

1994).  The starting point in determining a reasonable fee is the "lodestar" measure.  See Hensley v. Eckerhart, 461 U.S. 424, 433 (1983); Milner v. Farmers Ins. Exchange, 748 N.W.2d 608, 620-21 (Minn. 2008).  The court determines this figure by "calculating the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  Milner, 748 N.W.2d at 621 (quoting Hensley, 461 U.S. at 433).  The court may then "adjust the fee upward or downward" to achieve a more reasonable fee under the circumstances.  Hensley, 461 U.S. at 433-34.  "Factors considered in determining reasonableness include the time and labor required; the nature and difficulty of the responsibility assumed; the amount involved and the results obtained; the fees customarily charged for similar legal services; the experience, reputation, and ability of counsel; and the fee arrangement existing between counsel and the client."  Milner, 748 N.W.2d at 621 (citation and internal quotation marks omitted).  It is not "necessary for district courts to examine exhaustively and explicitly, in every case, all of the factors that are relevant to the amount of a fee award."  Griffin v. Jim Jamison, Inc., 188 F.3d 996, 997 (8th Cir. 1999).

Mayo submitted an affidavit and exhibits documenting the hours expended litigating its claims and the billing rates for these services. See Galindez Decl. Ex. 1, ECF No. 365.  Mayo submitted a supplemental declaration and exhibits documenting the time

3

expended to litigate its trade secret misappropriation claim.[1]  See Steinert Supplemental Decl. Ex. 2, ECF No. 399.  "[A] detailed affidavit of attorney's fees and costs, showing the fees broken down on an hourly basis" is generally "sufficient to justify the claimed amount of fees."  Willhite v. Collins, 459 F.3d 866, 869 (8th Cir. 2006).  In total, Mayo expended 5,311.7 hours at an average hourly billing rate of $461, for a total of $2,447,058.36 in attorneys' fees.  See Galindez Decl. Ex. 1.  Of its total fees, $1,900,139.30 are attributable to Mayo's prosecution of its trade secret misappropriation claim.  See Steinert Supplemental Decl. ¶ 4, Ex. 2.

This protracted litigation required substantial time and labor.  Elkin filed a parallel action in the United States District Court for the Southern District of New York, forcing Mayo to move to enjoin the parallel action.  See ECF No. 14.[2]  At Elkin's

---

[1] Where, as here, all Mayo's claims for relief "involve a common core of facts" and are "based on related legal theories ... the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Hensley, 461 U.S. at 424. Therefore, the court need not "parse the requested attorneys' fees by claim in order to discount fees spent pursuing claims that may not, standing alone, permit recovery." I-Sys., Inc. v. Softwares, Inc., No. 02-1951, 2005 WL 1430323, at *12 (D. Minn. Mar. 7, 2005). However, the percentage of time expended on the trade secret misappropriation claim informs the court's determination of the reasonableness of the overall attorneys' fees award.

[2] Elkin stipulated to transfer and consolidate the parallel action, see ECF No. 28, and Mayo withdrew the motion, see ECF No. 29.

request, the court bifurcated discovery to encourage early resolution of some claims. See ECF No. 76, at 2. Elkin then moved for summary judgment on topics prohibited by the bifurcated plan, forcing Mayo to file a motion to compel discovery. See ECF No. 76, at 4. In total, Mayo filed four motions to compel discovery, see ECF Nos. 61, 170, 180, 212, which the magistrate judge granted or granted in part, see ECF Nos. 76 (granted), 179 (granted in part), 189 (granted with qualifications), 253 (granted in part). The parties engaged in multiple mediation attempts and informal settlement discussions, including an 8-hour settlement conference with the magistrate judge. Mayo's settlement offer of October 7, 2009, was closer to the jury's award than any offer made by Elkin. See ECF No. 360. The pre-trial history of this case includes motions to dismiss, to exclude expert testimony and for summary judgment. In short, Elkin's contumacious litigation strategy significantly increased the time and resources required to resolve the present action. "A party cannot litigate tenaciously and then be heard to complain about the time necessarily spent overcoming its vigorous defense." Weitz Co. v. MH Washington, 631 F.3d 510, 530 (8th Cir. 2011) (citation omitted).

The trial involved complex questions of intellectual property and computer science. Mayo used expert testimony to prove its claim for trade secret misappropriation and to prove that it was the lawful and exclusive owner of the medical informatics software

5

and its source code.  See ECF No. 385, at 36-37.  Moreover, Mayo's attorneys possess a high level of skill, experience and competence. See Galindez Decl. ¶¶ 11-17.

Mayo prevailed and is entitled to fees.  At trial, Mayo's attorneys secured substantial benefits, including a Rule 50(a) motion in its favor on the question of ownership of the medical informatics software and a jury verdict in its favor on every claim asserted against Elkin.  The jury found in Mayo's favor on the core issues in dispute.  Although the jury found Mayo liable for breach of contract for failing to pay royalties, the jury awarded Elkin a small percentage of the damages that he sought.  See Answer 30 (seeking total of $560,000 in unpaid royalties).  In light of the above factors, the court finds $1,900,139.90 in attorneys' fees reasonable.[3]

Mayo also seeks reimbursement for $127,012.57 in costs based on Elkin's liability for trade-secret misappropriation.[4]  See Steinert Supplemental Decl. ¶ 4.  The Minnesota trade-secret statute only provides for "reasonable attorney's fees to the

---

[3] Pursuant to a merger agreement between Cerner and Conceptual Health Solutions, Mayo may be obligated to indemnify Cerner for legal fees that Cerner incurred in this action.  See Galindez Aff. ¶ 23.  At this time, the nature and extent of Mayo's obligation to indemnify Cerner is unknown and any award would be purely speculative.  As a result, the court declines to award attorneys' fees that Mayo may be obligated to pay Cerner.

[4] These costs are in addition to those available under 28 U.S.C. § 1920.  Section 1920 costs are not at issue in this order.

prevailing party." Minn. Stat. § 325C.04. It does not include costs. See id. In contrast, the Minnesota Legislature expressly includes costs in other statutes. See, e.g., id. § 325D.45 ("Costs shall be allowed to the prevailing party unless the court otherwise directs. The court may award attorneys' fees to the prevailing party...."); id. § 177.27 subdiv. 10 (allowing costs and fees in fair labor standards cases); id. § 10A.20 subdiv. 15 ("A prevailing party under this subdivision may be awarded attorney fees and costs by the court.").

Moreover, § 325C.04 is identical to § 4 of the Uniform Trade Secrets Act. Other states that adopted this model statute expressly added costs. See, e.g., Cal. Civ. Code § 3426.4 (2011); Mont. Code Ann. § 30-14-405 (2009). As a result, under the plain language of Minnesota Statutes § 325C.04, costs are not available. In the present case, Mayo provides no explanation of costs to allow the court to determine if any of the requested costs are properly construed as fees. See Sun Media Sys., Inc. v. KDSM, LLC, 587 F. Supp. 2d 1059, 1078-79 (S.D. Iowa 2008). Therefore, the Mayo's request for costs under § 325C.04 is denied.[5]

---

[5] Even if costs were recoverable under § 325C.04, the court would award the same total sum of $1,900,139.30 in light of the reasonableness factors discussed above.

**CONCLUSION**

Accordingly, based on the above, **IT IS HEREBY ORDERED** that defendant Dr. Peter L. Elkin pay plaintiffs Mayo Foundation for Medical Education & Research and Mayo Clinic $1,900,139.30 in attorneys' fees.

Dated:  August 24, 2011

s/David S. Doty
David S. Doty, Judge
United States District Court
